# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| ENROLLED MEMBERS OF THE BLACKFEET TRIBE aka Treaty Status Indians; RICHARD HORN; DUANE MANY HIDES; ROY INGRAM; ERNEST OLSON; LARRY M. REEVIS,<br><br>      Plaintiffs,<br><br>vs.<br><br>THEDUS CROWE; KEVIN K. WASHBURN; SALLEY JEWELL; BARACK OBAMA,<br><br>      Defendants. | CV 15-92-GF-BMM-JTJ<br><br>**FINDINGS AND RECOMMENDATIONS** |

## **INTRODUCTION**

Plaintiffs Richard Horn, Duane Many Hides, Roy Ingram, Ernest Olson and Larry M. Reevis have filed an Amended Complaint *pro se*. (Doc. 29). Plaintiffs are all enrolled members of the Blackfeet Tribe. The named Defendants consist of Thedus Crowe, a Bureau of Indian Affairs Superintendent; Kevin K. Washburn, Assistant Secretary of the Bureau of Indian Affairs; Salley Jewell, Secretary of the Interior; and Barack Obama, former President of the United States.

Plaintiffs challenge the integrity of the Blackfeet Water Compact that was executed by the Blackfeet Tribe, the State of Montana, and the United States in 2009. (Docs. 1, 11-15, 29). Plaintiffs allege that the Blackfeet Water Compact is invalid for the following two reasons: 1) the Blackfeet Tribal Business Council lacked the authority under tribal law to negotiate and ratify the Compact on behalf of the Blackfeet Tribe; and 2) the referendum election through which the Tribal membership adopted the Compact violated Article IX of the Blackfeet Constitution, given that less than one-third of the eligible voters of the Blackfeet Tribe voted in the election. (Doc. 29 at 2-3).

Plaintiffs seek injunctive relief, monetary relief and mandamus relief. Plaintiffs request that the Court transfer "legal title to all natural resources on . . . the Blackfeet Indian [R]eservation" to them. (Doc. 1 at 2). Plaintiffs request that the Court stop the "illegal disposition of the Blackfeet tribal property." *Id*. Plaintiffs request that the Court prohibit the state of Montana "from exercising adjudicatory jurisdiction over the Blackfeet Indian [R]eservation and Blackfeet [T]ribal Water Right(s)." *Id*. Plaintiffs request that the Court grant them "Title to all water ways originating or passing through the Blackfeet Indian [R]eservation," and Plaintiffs seek "compensatory . . . damages for the illegal capture and utilization of . . . Tribal Water Right[s]." (Doc. 1 at 3).

-2-

Defendants have moved to dismiss this action under Fed. R. Civ. P. 12. Defendants argue that Plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction, and for failure to state a claim upon which relief may granted.

The court conducted a hearing on the Defendants' motion to dismiss on August 22, 2018.

## BACKGROUND

The Blackfeet Tribe, the State of Montana, and the United States executed the Blackfeet Water Compact in 2009. The Montana legislature codified the Compact at Mont. Code Ann. § 85-20-1501. The stated purpose of the Compact was "to settle for all time any and all claims to federal reserved water rights for the Blackfeet Tribe within the boundaries of the Blackfeet Indian Reservation." *Id*. The Compact quantifies the Blackfeet Tribe's federal reserved water rights. *Id*. The Compact describes the terms under which the Blackfeet Tribe may use, lease, contract, or exchange portions of its water rights. *Id*. The Compact protects the rights of non-Indian water users, and the Compact provides for federal and state funding for water related infrastructure projects on the Blackfeet Indian Reservation. *Id*. The federal government has agreed to contribute $422 million for

water related infrastructure projects on the Blackfeet Indian Reservation. The state of Montana has agreed to contribute $49 million. (Doc. 33 at 19).

The United States Congress ratified the Compact under the Blackfeet Water Rights Settlement Act, P.L. 114-322, 130 Stat. 1841, § 3701 *et seq.* in December of 2016. The Blackfeet Tribe voted to approve both the Blackfeet Water Compact (the state legislation) and the Blackfeet Water Rights Settlement Act (the federal legislation) in April of 2017, in a referendum election conducted by the Blackfeet Business Council. The Blackfeet Tribe approved the Blackfeet Water Compact and the Blackfeet Water Rights Settlement Act by a vote of 1,894 in favor to 631 against. *See* Blackfeet Tribal Resolution No. 152-2017.

## DISCUSSION

### A. Motion to Dismiss Legal Standard

A complaint may be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge the sufficiency of the allegations of the complaint (a facial challenge), or it may challenge the truth of the allegations regarding the existence of subject matter jurisdiction (a factual challenge). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

Here, the challenge to jurisdiction is a facial attack because the Defendants contend that the allegations of jurisdiction contained in the pleadings are insufficient on their face to demonstrate the existence of jurisdiction. When reviewing a facial challenge to jurisdiction, the Court must assume that all material allegations in the complaint are true. *Savage v. Glendale Union High School District No. 205*, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003).

B.  **Subject Matter Jurisdiction**

The claims asserted by Plaintiffs have their genesis in an intra-tribal dispute. Plaintiffs seek to have the Blackfeet Water Compact declared invalid and unenforceable. Plaintiffs allege that the Compact is invalid and unenforceable because the Blackfeet Tribal Business Council lacked the authority under tribal law to negotiate and ratify the Blackfeet Water Compact, and because the referendum election through which the Tribal membership adopted the Compact violated Article IX of the Blackfeet Constitution. (Doc. 29 at 2-3).

All of Plaintiffs' claims are grounded in Blackfeet tribal law and the Blackfeet Constitution. Resolution of Plaintiffs' claims would necessarily require the Court to interpret Blackfeet tribal law and the Blackfeet Constitution. Federal courts lack jurisdiction to resolve intra-tribal disputes that require the court to interpret tribal law or a tribal constitution. *See e.g.*, *Runs After v. United States*,

766 F.2d 347, 352 (8th Cir. 1985) ("disputes involving questions of interpretation of [a] tribal constitution and tribal law [are] not within the jurisdiction of [a] district court."); *Smith v. Babbitt*, 100 F.3d 556, 559 (8th Cir. 1996) (federal courts do not possess jurisdiction over intra-tribal disputes); *Sac & Fox Tribe of the Mississippi in Iowa, Election Bd. v. Bureau of Indian Affairs*, 439 F.3d 832, 835 (8th Cir. 2006) (federal courts lack jurisdiction to resolve intra-tribal dispute requiring interpretation of tribal constitution); *see also Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1143 (10th Cir. 2004) (federal courts lack jurisdiction over intra-tribal disputes because disputes over the meaning of tribal law do not arise under the Constitution, laws or treaties of the United States).

Tribal election disputes are intra-tribal matters. Federal courts lack jurisdiction over tribal election disputes that require interpretation of tribal law or a tribal constitution to resolve. *See Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983); *U.S. Bancorp v. Ike*, 171 F. Supp.2d 1122, 1125 (D. Nev. 2001) (citing cases).

The federal government has a longstanding policy of encouraging tribal self-government. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987). Indian tribes possess inherent and exclusive power over matters of internal tribal governance. *See Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463

(10th Cir. 1989); *Goodface*, 708 F.2d at 339. An Indian tribe's right to conduct an election without federal interference is essential to the tribe's right to self-government. *Wheeler v. Swimmer*, 835 F.2d 259, 262 (10th Cir. 1987).

Here, the proper forum for Plaintiffs to challenge the validity of Blackfeet Water Compact and the related tribal referendum election is the Blackfeet Tribal Court. *See Sac & Fox Tribe of the Mississippi in Iowa, Election Bd.*, 439 F.3d at 835. This Court lacks jurisdiction over Plaintiffs' claims.

### C. Plaintiffs' Entitlement to Appointed Counsel

During the hearing on August 22, 2018, Plaintiffs requested that the Court order the government to provide them with legal counsel in this case. Plaintiffs argued that the government possessed a duty to provide legal counsel under 25 U.S.C. § 175.

Section 175 of Title 25 grants the United States Attorney General with the authority to represent Indians in all lawsuits at law and in equity. Section 175 provides as follows:

> In all states and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity.

25 U.S.C. § 175. The Ninth Circuit Court of Appeals has held, however, that §175 is not mandatory. *United States v. Gila River Pima-Maricopa Indian Community*,

391 F.2d 53, 56 (9th Cir. 1968). Section 175 does not require the government to represent individual tribal members in lawsuits or to provide individual tribal members with private counsel at the government's expense. *See Crow Allottees Association v. United States Bureau of Indian Affairs*, 705 Fed. Appx. 489, 492 (9th Cir. 2017) (unpublished).

## FINDINGS AND RECOMMENDATION

The Court FINDS:

1. The government is not required to provide Plaintiffs with legal counsel in this case.

2. This Court lacks subject matter jurisdiction over this case as it involves an intra-tribal dispute. Jurisdiction to resolve this intra-tribal dispute lies exclusively with the Blackfeet Tribal Court.

The Court RECOMMENDS:

1. Plaintiffs' oral Motion for Appointment of Counsel should be DENIED.

2. Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 32) should be GRANTED.

3. Defendant's Motion to Dismiss Plaintiffs' original Complaint (Doc. 19) should be DENIED as moot.

4.      This case should be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing.  28 U.S.C. § 636(b)(1).[1]  A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 5th day of September, 2018.

*/s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that when a party must act within a specified time after being served and service is made by mail under Rule 5(b)(2)(C), three days are added after the period would otherwise expire under Rule 6(a).  Since Plaintiffs are being served by mail, they are entitled to an additional three days after the period would otherwise expire.